**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Johnny Bob ROBERTSON,
Defendant-Appellant.**

**No. 78–2805.**

United States Court of Appeals,
Ninth Circuit.

Sept. 12, 1979.

Charles G. Rubin, Los Angeles, Cal., for defendant-appellant.

Suzanne B. Conlon, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN and KENNEDY, Circuit Judges, and EAST,* District Judge.

EAST, Senior District Judge.

The appellant Johnny Bob Robertson (Robertson) and codefendant Christopher Walker (Walker) were tried before a jury for the armed robbery of a federally insured savings and loan association. (18 U.S.C. § 2113(a), (d)). Robertson was convicted, while Walker was acquitted on a motion for directed verdict. On appeal from his judgment of conviction and sentence to custody, Robertson claims that the District Court improperly denied three motions: (1) a motion to suppress pretrial identifications of him made from an allegedly suggestive photospread, and to suppress in court identifications allegedly prejudiced by those prior identifications, (2) a motion to conduct a lineup, and (3) a motion to suppress evidence and statements obtained as a result of a warrantless entry into a dwelling. We remand.

*FACTS*

In the early afternoon of January 27, 1978, a man, later identified as Robertson, entered the Citizen's Savings and Loan Association in Harbor City, California. His pacing back and forth and other suspicious actions attracted the attention of four tellers, and one of them activated a hidden surveillance camera. He left without transacting any business. Within an hour, the Association was robbed by two armed men, one wearing a ski mask over his face and the other wearing a knit cap and a mask made from a nylon stocking. Two witnesses identified Robertson as the man they saw approaching the bank, pulling a nylon stocking over his head. Five witnesses testified that the man who had earlier "cased" the bank was one of the robbers, and all of them identified Robertson as that man. Numerous surveillance camera photographs were taken of the pair.

Immediately after the robbery, the police were given descriptions of the robbers, as well as the make and license number of the getaway car. The vehicle was soon found abandoned near the home of Walker's mother, and a bystander reported seeing two men meeting the general description of the robbers running from the vehicle. Sheriff's deputies placed the house under surveillance and within an hour observed Robertson's cousin, William Redick (Redick), pick up a man meeting the description of one of the robbers. They were followed to Redick's home and were observed entering the house.

Because of his previous experience with similar robberies in the area, the Federal Bureau of Investigation ordered Special Agent Price (Price) to take charge of the operation. Working on another investigation in a neighboring city, Agent Price received his assignment by radio and proceeded to join the surveillance team at the Redick home. Although his only detour was a stop at his office to pick up a file, distance and traffic congestion delayed his arrival for over two hours.

Apparently Agent Price knew that Walker fit the description of one of the robbers, and that Walker had previously been in possession of the getaway car. He also knew that Redick was awaiting sentencing after an armed bank robbery conviction. Agent Price was able to communicate with his office by radio, but it is unclear exactly when and how much of the information known to other police officers was communicated to him before his arrival.

Upon arrival at the Redick home, Price conferred with other officers and obtained an opinion from a Deputy United States Attorney by radio that they had probable cause to make an arrest. Although he had no warrant, Agent Price immediately knocked on the door and identified himself as an FBI agent. Redick opened the door and Price, with several other FBI agents and two local officers, entered. Once inside, the other officers searched the house while Price questioned Redick. Redick de-

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

nied any involvement in the crime, but told Agent Price that his cousin "Johnny Bob" was "the man [they were] looking for." A search of the house revealed Robertson watching television in a bedroom.

Robertson matched the description given to the police, and was wearing pants similar to those described by several witnesses, but no shirt. When one of the officers questioned him about a shirt found lying on the bed, he admitted that it was his and an officer tied it around his neck. Robertson was arrested, taken to the police station, and charged with the robbery. The shirt was routinely taken from him and inventoried at the jail along with his other possessions. Two months later the shirt was taken from the jail for use as evidence. Later on the day of the robbery, the police legally recovered a jacket, knit cap, and ski mask, identified as those worn in the robbery, from the home of Walker's mother.

## DISCUSSION

### Issue I.  Photospread.

Some time within two months of the robbery, two witnesses were shown a photospread containing Robertson's picture and asked to identify either of the robbers. One witness pointed out Robertson and the other was unable to make an identification.

Robertson then moved to suppress the identification, arguing that the photospread was unduly suggestive in that he was pictured with a hairstyle that was significantly larger and longer than those shown in any of the other photographs. Robertson also made his motion to suppress any in court identifications of him, arguing that the identifying witness had been prejudiced by viewing the photospread.

■ Mere variations in appearance among persons or photographs presented to a witness do not automatically invalidate a pretrial identification. *United States v. Collins*, 559 F.2d 561 (9th Cir.), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *United States v. Crawford*, 576 F.2d 794 (9th Cir.), *cert. denied*, 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978). Before a conviction can be reversed on such grounds, the pretrial identification procedure must have been "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *United States v. Williams*, 436 F.2d 1166 (9th Cir. 1970), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). That is not the case here. Because the robbers wore knit caps, completely hiding their hair, the differences in hairstyle could not have been a substantial factor in identifying Robertson as one of them.

■ Although the hairstyle of the person who "cased" the bank prior to the robbery was readily apparent, any suggestiveness in the photographs that may have contributed to the identification of Robertson as that person was clearly harmless error. At trial, Robertson admitted that he was present in the bank before the robbery, but conducted no business there; surveillance photographs indicated that he was the object of the teller's suspicions; and several witnesses who had not viewed the photospread identified him as the man they had seen.

The District Court did not err in denying those motions.

### Issue II.  Lineup.

The District Court denied Robertson's motion that the Government be compelled to conduct a lineup for all witnesses who had viewed the photospread for the purpose of counteracting any improper influence it may have had. Robertson argues here that the denial violated the due process guarantee of the Fifth Amendment of the United States Constitution.

■ An accused has no absolute or constitutional right to a lineup. The decision to conduct a lineup is solely within the discretion of the trial judge. In the absence of abuse of that discretion, denial of such a motion is not reversible error. *United States v. Kennedy*, 450 F.2d 1089 (9th Cir. 1971), *cert. denied*, 406 U.S. 924, 92 S.Ct. 1793, 32 L.Ed.2d 125 (1972); *United States v. MacDonald*, 441 F.2d 259 (9th Cir.), *cert. denied*, 404 U.S. 840, 92 S.Ct. 133,

30 L.Ed.2d 74 (1971). In view of the fact that Robertson had significantly altered his appearance by the time of the motion, that there were several positive identifications unrelated to the photospread, and that the witness who identified Robertson from the photospread had an ample opportunity to observe the robber, denial of the motion clearly was not an abuse of discretion. *United States v. Estremera,* 531 F.2d 1103 (2d Cir.), *cert. denied,* 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976).

*Issue III. Motion to Suppress Evidence.*

■ Robertson primarily urges us to reverse his judgment of conviction on the ground that the District Court incorrectly denied his motion to suppress evidence and statements obtained as a result of the warrantless entry into the Redick home.[1] He argues that the entry and arrest violated both the probable cause and warrant requirements of the Fourth Amendment of the United States Constitution.[2] The first argument is unfounded.

■ The Fourth Amendment does not require that an officer have evidence sufficient to support a conviction before searching a dwelling. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). All that is necessary is a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that the suspects have committed a crime and are to be found in the place to be searched. *Brinegar v. Unit-*

*ed States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Green,* 525 F.2d 386 (8th Cir. 1975).

■ That standard has been met here. Agent Price knew that the getaway car had been abandoned near the home of Walker's mother, and that two men meeting the descriptions of the robbers had been seen running from it. From prior investigations involving Walker, Agent Price knew that he had previously been in possession of the vehicle, and that he met the description of one of the robbers. Agent Price was also aware that Walker's brother, himself a convicted bank robber, had picked up a man meeting the description of the other robber at the home of Walker's mother, and had driven him to the Redick residence. With that information, it was reasonable for Agent Price to believe that one of the robbers was inside the Redick home, and he had probable cause to enter.

■ Once inside, Redick told the officers that "Johnny Bob was the man [they were] looking for." Finding Robertson in a bedroom, Agent Price confirmed that he matched the description they had been given. Price also noticed that Robertson was wearing pants with a distinctive stitching pattern similar to those reportedly worn by one of the robbers. With that additional information, Agent Price had probable cause to make the arrest of Robertson.

1. Robertson actually argues that the validity of the warrantless entry should be determined by state standards. Although it appears that the same result would be reached under California law (*see, e. g., People v. Ramey,* 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333, *cert. denied,* 429 U.S. 929, 97 S.Ct. 335, 50 L.Ed.2d 299 (1976)), we need not decide that question. *See United States v. Valenzuela,* 596 F.2d 824, 830 (9th Cir. 1979). When evidence is seized in a search made principally by federal officers investigating a federal crime, its admissibility in federal court is to be determined by federal law. The incidental involvement of state officers is irrelevant. *United States v. Gaines,* 563 F.2d 1352 (9th Cir. 1977); *United States v. Hall,* 543 F.2d 1229 (9th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

2. Both parties apparently believe that Robertson has standing to challenge the search of Redick's home. Although he did not have a proprietary interest in the house, he did have such an interest in the items seized in the search: his clothing and his person. Robertson was also an overnight guest in the Redick home. He had already spent at least one night there and had stored his personal belongings in the room in which he was found. Under those circumstances, he appears to have had a reasonable expectation of privacy in the area searched and may raise a Fourth Amendment claim. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ Robertson additionally argues that the entry and resulting arrest violated the warrant requirement of the Fourth Amendment. In most cases, the police must obtain a warrant before they enter a dwelling to search for evidence, *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), or to arrest a suspect, *United States v. Prescott*, 581 F.2d 1343 (9 Cir. 1978); *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (D.C.Cir.1970). The issue presented here is whether one of the exceptions to that requirement, the presence of "exigent circumstances," justifies the officer's conduct.[3]

■ Exigent circumstances are those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained. The need for an immediate search must be apparent to the police, and so strong as to outweigh the important protection of individual rights provided by the warrant requirement. There must be no practical way to avoid these risks and yet follow the Constitution's mandate of detached judicial supervision of such intrusions. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *McDonald*, 335 U.S. at 455–56, 69 S.Ct. 191. Here, such circumstances might have been found in substantial risks that an armed and dangerous suspect would have escaped, important evidence would have been destroyed, or an armed confrontation would have occurred if the police had attempted to secure a warrant. On the other hand, even if the police foresaw or were aware of such circumstances in this case, they were nevertheless willing to await the arrival of Agent Price before entering the house. Thus, they may have passed up a reasonable opportunity to have obtained a warrant. If so, their failure to seek the approval of a detached judicial officer cannot be excused.

[15] Robertson argues both that the police had no significant reason to make an immediate entry into the house, and that they had ample opportunity to obtain a warrant during the two hours that the Redick house was under surveillance. Unfortunately, we are unable to consider either of those arguments here. Resolution of such questions requires a close examination of the facts of the case, something we are unable to do as a result of the incompleteness of the record and the District Court's failure to make specific findings of fact. Although the delay, the continual radio communication between the officers and their respective agencies, and the intensive surveillance cast doubt on the validity of the warrantless entry, too many questions remain unanswered for us to decide the issue. *Prescott*, 581 F.2d at 1350. Among other things, the record does not reveal how long it would have taken to have obtained a warrant. Neither does it reveal at what time Agent Price, or any other officer, first had sufficient information to provide probable cause so that a warrant could be sought. The police cannot be expected to seek a warrant until facts sufficient to establish probable cause are brought to the attention of a single individual who has both the ability to evaluate them and the opportunity to initiate the warrant acquisition process. If that did not occur until the time of Agent Price's arrival at the Redick residence, there was no undue delay. On the other hand, it might be that Agent Price or someone else in his office or at the scene was substantially aware of the situation and could have obtained a warrant within a reasonable time.

The facts of this cause fall some place between the poles of a peaceful consensual entry into a lodging in search of a suspect, which was involved in *United States v. Johnson*, (9th Cir. 1978) 608 F.2d 725, and

---

**3.** The trial judge, in comments made after denial of the motion to suppress, expressed a belief that the warrantless entry might be justified by Redick's consent. Because of the lack of findings of fact and the incompleteness of the record, we cannot decide that issue. However, even though the issue was not raised by either party, the question of consent is a proper one for inquiry and the entry of findings of fact on remand.

the knockdown, forcible entry involved in *Prescott.* We are faced with several separate and distinct queries for which the record before us is deficient. Did any of the officers at the scene of the Redick home, or engaged in directives at the office, have probable cause to arrest the suspect Robertson? If so, was there reasonable time and opportunity to have obtained a judicially mandated warrant for the search and arrest? Or was Agent Price, with his personal knowledge of the suspect and the situation before arrival or at the scene, able to pull the strings together and recognize the existence of probable cause with reasonable time to obtain a warrant before the search? Did exigent circumstances exist before or at the time the officers entered the house and were informed that Robertson was their man? Did Redick consent to an entry into his home and, if so, what was the scope and nature of that consent in relation to Robertson's expectation of privacy while in the dwelling.

Accordingly, we must remand this issue to the District Court with instructions to make findings of fact as required by Rule 12(e) of the Federal Rules of Criminal Procedure.

▇▇▇ Robertson further urges us to hold that the seizure of the shirt found on the bed and tied around his neck at the time he was arrested cannot be justified by any exception to the warrant requirement. In particular, he argues that the shirt was outside of his zone of control and could not be properly seized in a search incident to an arrest. Robertson's argument assumes too much; his motion to suppress was properly denied not because an exception applies, but because the warrant requirement itself is not applicable.

The warrant requirement was designed to protect the public against the overzealous efforts of the police to ferret out criminals, not to hamper their routine efforts to assist those with whom they deal. It applies to seizures made with an intent to obtain evidence, but not to seizures made with the limited purpose of protecting a suspect or his property. *See Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). At the time of Robertson's arrest, none of the officers had any reason to believe that the shirt was likely to be used as evidence. It was not until two months later, when witnesses were intensively interviewed in preparation for trial, that the Government learned that the suspect who "cased" the bank was wearing a similar shirt. The officers merely anticipated Robertson's future dealings with the police and the courts and sought to provide him with the minimum of clothing he would need to be comfortable in those dealings. No warrant is required to do so, nor is one required for the police to take the shirt into their possession when the suspect is booked into jail. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). If it later appears that the clothing may be valuable as evidence, the character of the original seizure does not change. The material is lawfully in the possession of the police and no warrant is required to examine it or to remove it from the jail. *Westover v. United States,* 394 F.2d 164 (9th Cir. 1968). *Cf. United States v. Cohn,* 472 F.2d 290 (9th Cir. 1973).

The District Court's judgment of conviction and sentence entered on May 26, 1978 remains in full force and effect while the cause is remanded to the District Court for further proceedings consistent herewith. The judgment of conviction and sentence shall remain in full force and effect or be vacated as the District Court shall direct.

REMANDED.