UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Lawrence POLLOCK,
Defendant-Appellant.

No. 83–1031.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1983.

Decided March 2, 1984.

Donald B. Ayer, U.S. Atty., Sacramento, Cal., Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Benedict J. Koller, Harry Allan Robertson, San Jose, Cal., for defendant-appellant.

Before MERRILL, KENNEDY and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Michael Lawrence Pollock appeals from convictions on thirty-seven counts arising from a conspiracy to manufacture and distribute methamphetamine. He contends that the district court improperly denied his motion to dismiss for a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* ("the Act"). He also argues that the district court should have granted his motion to suppress evidence he alleges was obtained pursuant to an insufficient warrant. We find that the government did not comply with the 30-day limit between arrest and indictment required by section 3161(b). We therefore vacate Pollock's conviction for the single conspiracy count charged in the original complaint, and remand to the district court to decide whether that count should be dismissed with or without prejudice. We also reverse the district court's ruling that Pollock did not have standing to raise his fourth amendment claim. The search warrant at issue, however, clearly met the particularity requirement. We therefore affirm Pollock's 36 remaining convictions.

## FACTS AND PROCEDURAL BACKGROUND

Surveillance of two men suspected of manufacturing methamphetamine led officers of the Federal Drug Enforcement Administration and California Bureau of Narcotics Enforcement to the Fresno residence of Sissie Smith. On the basis of additional information gathered by officers watching the Smith residence, a federal magistrate issued a search warrant for the premises on February 20, 1981. The warrant authorized the seizure of a variety of paraphernalia associated with the manufacture of methamphetamine. State officers and federal agents executed the warrant that day, seizing an operational methamphetamine laboratory, including chemicals, glassware, and documents evidencing manufacture and distribution of the drug, as well as several loaded weapons and silencers. At the same time they arrested appellant Pollock, Sissie Smith, and three other suspects on the premises. All the defendants appeared the next day before a magistrate and were held to answer to the charge of knowingly and intentionally conspiring to manufacture methamphetamine, 21 U.S.C. §§ 846, 841(a)(1).

The government took a long time to indict the defendants. Thirty-one days later, on March 23, the government made an *ex parte* application to have time excluded from the normal 30-day limit between arrest and indictment specified by 18 U.S.C. § 3161(b). The magistrate granted the request for the period from March 22 to May 21. He found that it was unreasonable to expect return of the indictment within the statutory time period because the facts before the grand jury were especially complex. Later, during the grand jury inquiry, two witnesses asserted the attorney-client privilege and refused to give certain testimony. A motion on whether that refusal was proper remained before Judge Edward Price from April 21 through May 24. After issuing his decision on that motion, Judge Price also excluded, for Speedy Trial Act purposes, the time he had spent considering it. The indictment was finally filed on June 16, 1982, charging Pollock with 50 counts of criminal conduct based on acts dating back to September 1979.

On December 3, 1982, Pollock moved to dismiss the charges against him with prejudice for violation of his rights under the Speedy Trial Act, and to suppress the evidence from the Smith residence on the ground that the search warrant did not meet the particularity requirement of the fourth amendment. Judge Robert Coyle heard both motions and denied them. Pollock and the government subsequently agreed to proceed to trial before Judge Coyle on stipulated facts.[1] By virtue of this

---

1. Pollock went to trial on February 3, 1982. 18 U.S.C. § 3161(c)(1) provides that the trial of an individual must commence within 70 days of either the filing of an indictment or the individual's appearance before a judicial officer, whichever is later. In this case the period of

agreement the government allowed Pollock to preserve his Speedy Trial Act and fourth amendment claims on appeal, while procuring his guilty plea. In accordance with the agreement, the court convicted Pollock of 37 counts, including conspiracy, 21 U.S.C. § 846, possession and distribution of a controlled substance, 21 U.S.C. § 841(a)(1), and various firearms offenses. The court sentenced him to 22 years imprisonment and a special parole term of life. This appeal from the resulting judgment of confinement raises the issues preserved in the two pre-trial motions.

## DISCUSSION

### I. Speedy Trial Act

We first address Pollock's claim under the Act. Under § 3161(b)[2] of the Act, a defendant must be indicted within 30 days of his arrest, unless the time is extended for one of the eight reasons specified by section 3161(h). If the time limit is not met, the charges in the complaint must be dismissed under section 3162(a)(1)[3]. The trial judge may dismiss the complaint with or without prejudice.

The briefs for both Pollock and the government focus only on the validity of the magistrate's order to exclude March 22 through May 21 from counting toward the 30-day limit. The parties argue, in essence, three issues: (1) whether the magistrate had authority under the Act to exclude time, (2) whether the ex parte nature of the government's application for the magistrate's order violated the Act and Pollock's right to due process, and (3) whether the magistrate was substantively correct in finding that the complexity of the case merited an order to exclude time.

We need not reach any of these arguments.[4] Neither counsel for Pollock in his brief nor the court below in denying Pollock's motion addressed the point that is dispositive of Pollock's claim. We find that the government did not indict Pollock in a timely manner, notwithstanding the validity of the magistrate's order.

### A. Violation of the 30-Day Limit

#### 1. Background

Congress enacted the Speedy Trial Act to solve some of the problems inherent in enforcing the Sixth Amendment guarantee of "the right to a speedy trial."[5] *See United States v. Antonio*, 705 F.2d 1483, 1485 (9th Cir.1983). The Act was intended to clarify the rights of defendants and to ensure that criminals are brought to justice

---

time between Pollock's indictment and trial exceeded 70 days. The excess days during the indictment to trial period, however, were covered by orders of exclusion not contested here or below.

2. Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.
18 U.S.C. § 3161(b) (1976).

3. If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In deter-

mining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of justice.
18 U.S.C. § 3162(a)(1).

4. We do, however, note that the Act defines "the terms 'judge' or 'judicial officer' [t]o mean, unless otherwise indicated, any United States magistrate [and] federal district judge." 18 U.S.C. § 3172(1) (1976). *See United States v. Carrasquillo*, 667 F.2d 382, 385–86 (3rd Cir. 1981).

5. The specific time limits set by the Speedy Trial Act are, of course, different from the broader limits of the sixth amendment or the due process clause of the fifth amendment. The application of those constitutional provisions is governed by the more flexible consideration of prejudice caused by delay. *See United States v. Mehrmanesh*, 652 F.2d 766, 769 (9th Cir.1980).

promptly. *See* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974,* (Fed.Judicial Center 1980) at 12–13 [hereinafter cited as *Partridge*]. Congress was concerned about a number of problems—such as disruption of family life, loss of employment, anxiety, suspicion, and public obloquy—that vex an individual who is forced to await trial for long periods of time. *See* H.R.Rep. No. 1508, 93rd Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7408. At the same time Congress also recognized that there is a strong public interest in speedy justice. Defendants released on bail are known to commit a large number of crimes, and all defendants whose cases drag on become heavy burdens on the criminal justice system. *Id.; see Barker v. Wingo,* 407 U.S. 514, 519–20, 92 S.Ct. 2182, 2186–87, 33 L.Ed.2d 101 (1972).

To address these concerns the Act prescribes strict time limits within which each stage of prosecution must be completed. A crucial part of this scheme is the requirement that an indictment be filed within 30 days of arrest. 18 U.S.C. § 3161(b). Pollock's arrest by federal agents on February 20, 1982 triggered the application of this provision. The grand jury did not indict him, however, until June 19, 1982, a total of 119 days later.[6]

### 2. The orders to exclude time

Section 3161(h)(1)–(8) specifies eight situations when delay may be excluded in computing the time within which an indictment must issue.[7] Only section 3161(h)(8) gives discretion to the trial court; it permits the judge to exclude from the 30-day limit continuances granted when the "ends of justice" outweigh the best interests of the defendant and public in a speedy trial.[8]

**6.** The Speedy Trial Act does not explain how to count the days toward the 30-day limit from arrest to indictment specified by § 3161(b). We add 30 days to the date of arrest, counting weekends and holidays but not the date of arrest itself. *See also, United States v. Gonzalez,* 671 F.2d 441, 443 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982) (to count 70-day limit from indictment to trial, add 70 days to date of indictment).

**7.** 18 U.S.C. § 3161(h)(1)–(7) (1976 & Supp. III 1979) contains narrow, automatic exclusions from the time limits for necessary pre-trial proceedings, treatment of a defendant, trials on other charges, interlocutory appeals, and unavailability of defendants or essential witnesses, among other reasons. *See United States v. Nance,* 666 F.2d 353, 355 (9th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). None of these grounds applied to the orders granted in Pollock's case.

**8.** (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
\* \* \* \* \* \*
(8)(A) Any period of delay resulting from a continuance granted by any judge on his own *motion or at the request of the defendant or* his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No

such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance *outweigh the best interests of the public and the defendant in a speedy trial.*

(B) The factors among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

(i) Whether the failure to grant such a continuance *in the proceeding would be likely to make a continuation of such proceeding impossible,* or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that *it is unreasonable to expect adequate preparation for pretrial proceedings or for the* trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable *to expect return and filing of the indictment within the period specified in section* 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole,

Both Magistrate Christensen and Judge Price granted their respective orders to exclude time on the basis of section 3161(h)(8). Magistrate Christensen excluded the time between March 22 and May 21 and Judge Price excluded the period from April 21 through May 24. The magistrate's order, however, did not cover the 29 days from Pollock's arrest on February 20 to March 22. Judge Price's order did not cover the 26 days from its expiration on May 24 until the indictment came down on June 19. Together, therefore, the two orders did not exclude 55 days, well over the 30-day limit prescribed by section 3161(b).

At oral argument the government conceded that the dates of the two orders substantially coincided but argued that Judge Price intended to extend rather than overlap the time excluded by Magistrate Christensen. The prosecutor contended that since Judge Price based his order on a separate ground, the government should not be denied the full benefit of both exclusions. Were we to add the 34 days excluded by Judge Price to the 61 days excluded by Magistrate Christensen, Pollock's indictment would indeed have been timely.

We decline the government's invitation to ignore the plain meaning of the exclusion orders. The orders of Magistrate Christensen and Judge Price purport to exclude periods of time from particular date to particular date, not for a set number of days at some indefinite time.

This construction is also the most consistent with the purposes of the "ends of justice" exclusion. Congress included the "ends of justice" exclusion of time in recognition that courts need some discretion to deal with otherwise unavoidable delays in the indictment and trial process. The "ends

is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

of justice" exclusion was not, however, meant to be a general exclusion for every delay no matter what its source, but was to be based on specific underlying factual circumstances. *See United States v. Nance,* 666 F.2d 353, 355–56 (9th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). Section 3161(h)(8) contains factors which the trial court must consider and cannot be invoked without specific findings in the record. *Id.; United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 375 (2d Cir.1979). Here it is apparent that Magistrate Christensen found that the complexity of the case would delay an indictment until May 21 and that Judge Price found that the refusal of certain witnesses to testify would cause a delay until May 24, 1982. Neither Magistrate Christensen nor Judge Price made any findings for either the 29 days before March 22 or the 26 days after May 24. To allow the government to convert an exclusion until a certain date to an exclusion for a certain number of days would dissociate the period of exclusion from the specific delay which occasioned the exclusion. We hold that an "ends of justice" extension under section 3161(b) is proper only if ordered for a specific period of time and justified on the record with reference to the factors enumerated in section 3161(h)(8)(B). *See United States v. Perez-Reveles,* 715 F.2d 1348, 1353 (9th Cir. 1983); *United States v. Carrasquillo,* 667 F.2d 382, 388 (3rd Cir.1981); *United States v. Didier,* 542 F.2d 1182, 1189 (2d Cir.1976).

### 3. Sanction of dismissal

Viewed in a light most favorable to the government, the violation of the 30-day limit specified by section 3161(b) was the result of negligence rather than bad faith. When he requested the order to exclude time from

(C) No continuance under paragraph (8)(A) of this subsection shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government. 18 U.S.C. § 3161(h)(8) (1976).

March 22 to May 21, the prosecutor obviously contemplated that the grand jury would indict Pollock during that period. On May 24, the last effective date of Judge Price's overlapping order, the prosecutor in fact orally asked Judge Price to find further excludable time pending the outcome of his decision on the motion to determine the validity of the claim of privilege by the two grand jury witnesses. After a confused colloquy with the prosecutor, the court indicated that it would consider his request,[9] but in fact no further action was taken by either the government or the court.[10]

■ To invoke the sanction of dismissal provided by section 3162(a)(1), however, we need not inquire whether the delay in Pollock's case resulted from mere inadvertence or bad faith on the part of the government. *See United States v. Cobb,* 535 F.Supp. 112, 114 (W.D.N.Y.), *reversed on other grounds,* 697 F.2d 38 (2d Cir.1982). The triggering of the sanction is unambiguous: if the indictment is not filed within 30 days of arrest, the charge contained in the complaint shall be dismissed. 18 U.S.C. § 3162(a)(1); *see United States v. Antonio,* 705 F.2d 1483, 1485 (9th Cir.1983).

## B. Charges to Be Dismissed

■ Pollock was initially arrested and held to answer on the single charge of conspiracy to manufacture and distribute methamphetamine. He was subsequently indicted on 50 counts, some of which involved offenses based upon the same criminal episode, but most of which specified separate offenses discovered during the grand jury's investigation. We must decide which charges to dismiss when an indictment is not timely and the offenses specified in the indictment are not confined to those in the complaint. We hold that when the government fails to indict a defendant within 30 days of arrest, section 3162(a)(1) requires dismissal of only the offense or offenses charged in the original complaint.

This construction follows the clear meaning of the statutory language. Section 3162(a)(1) states that only "such charge against that individual *contained in such complaint* shall be dismissed or otherwise dropped." (emphasis added). *Cf. United States v. Kripplebauer,* 463 F.Supp. 291 (E.D.Pa.1978) (arrest on one charge does not trigger the running of time on some other criminal offense). "Absent a clear indication of legislative intent to the contrary, the statutory language controls its construction." *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981).

Moreover, Congress implicitly rejected the broad construction of the dismissal sanction urged by Pollock. Only in the initial draft of the Act did the bar against reprosecution apply to "that offense or any offense based on the same conduct or aris-

9. "Mr. LEIGHTON: Your Honor, although it doesn't apply to Mr. Fernandez, he's not in custody and has never been charged in this case, will the Court further find excludable time pending the outcome of the Court's decision while it's under submission?
"THE COURT: I'm not going to commit myself to that, Mr. Leighton. I may very well if I'm satisfied that it's proper, but this is a new area. I've never—sort of boggles my mind that you can exclude time before the charge is made.
"Mr. LEIGHTON: It's right in the rule.
"THE COURT: All right. Then I'll read it. I haven't read it before. I think the time we're talking about here goes more to pre-indictment delay rather than to—oh, I see. I see. You're talking about the people who are in custody.
"Mr. LEIGHTON: Correct.
"THE COURT: Mr. Fernandez wouldn't be—

"MR. LEIGHTON: No, but I'm relating to Cheryl and Michael Pollock.
"THE COURT: Okay. Now we're on the same wavelength.
"MR. MAGILL: Thank you, your Honor."
(The proceedings were adjourned.)
Record for May 24, 1982 at 42–43.

10. We believe that the lower court's neglect to fulfill its duty of supervision under the Act can be traced primarily to the fact that it scheduled the two government motions to exclude time and Pollock's *motion to dismiss before two different judges and a magistrate.* But "the monitoring of the limitations period is not the exclusive burden of the district judge. The Government shares the responsibility for speedy trial enforcement." *United States v. Perez-Reveles,* 715 F.2d 1348, 1353 (9th Cir. 1983).

ing from the same criminal episode." *Partridge, supra,* at 32–33. This language would have required courts to engage in the complex task of investigating the relationship between the conduct underlying the offenses charged in the complaint and the conduct underlying the offenses listed in the indictment. The House Judiciary Committee confined the bar to those offenses "which were known or reasonably should have been known at the time of dismissal." *Id.* Even this version would have forced courts to make an intrusive inquiry into what the prosecutor knew at various stages in the prosecution. The version of section 3162 actually passed by Congress, however, creates a sensible legal test that courts can efficiently apply. With the present more restrictive language the offenses to be dismissed are now apparent on the face of the complaint.[11]

C. Dismissal With or Without Prejudice

█ Whether the dismissal shall be with or without prejudice is committed to the trial judge to consider based upon three factors: the seriousness of the offense, the circumstances leading to dismissal, and the impact that reprosecution would have on the administration of the Act and on the administration of justice. 18 U.S.C. § 3162(a)(1). Pollock argues that the dismissal should be with prejudice. The government responds that this court, if it finds dismissal warranted, must remand to the district court to determine what form such dismissal should take. Some courts of appeal have decided the form of the dismissal sanction, but only to affirm or reverse a decision already rendered below. *See, e.g., United States v. Caparella,* 716 F.2d 976 (2d Cir.1983); *United States v.*

*Bittle,* 699 F.2d 1201 (D.C.Cir.1983); *United States v. Carreon,* 626 F.2d 528 (7th Cir. 1980). We find that the district court should determine in the first instance whether the single charge in the complaint against Pollock should be dismissed with or without prejudice, according to the factors specified in section 3162(a)(1). *See, e.g., United States v. Antonio,* 705 F.2d 1483, 1487 (9th Cir.1983); *United States v. Carrasquillo,* 667 F.2d 382, 390 (3d Cir.1981).

D. Raising Argument on Appeal

1. Form of Pollock's objection

At oral argument the government stressed that Pollock based his Speedy Trial Act objection below only on the validity of the magistrate's order. According to this view, an unfortunate oversight by counsel for Pollock precludes our counting the days in Pollock's favor here.

█ The government's characterization of Pollock's Speedy Trial Act objection is inaccurate, however. It is true that both Pollock's oral objection on May 24, 1982 and his written submission to the court on December 3, 1982 questioned only the validity of the magistrate's order. But the parties also agreed to stipulated facts before Pollock's trial on February 3, 1983. In that document the government conceded that Pollock could preserve as one of two issues on appeal the question "whether there was a violation of the Speedy Trial Act with respect to the delay between the defendant Michael Lawrence Pollock's arrest on February 20, 1982 and the date that the instant indictment was filed on June 16, 1982." This question is phrased in general terms and not confined to the issue of the validity of the magistrate's order. In the absence of evidence to the contrary, we decline to

---

**11.** This construction also preserves the prosecutor's ability to exercise his traditional discretion. Decisions such as when to arrest a suspect and which charges to bring fall primarily, if not exclusively, within the jurisdiction of the executive branch under the Constitution. *See e.g., United States v. Miller,* 722 F.2d 562 (9th Cir.1983); *United States v. Hillegas,* 578 F.2d 453, 456–57 (2d Cir.1978). We therefore decline to construe section 3162(a)(1) to set a timetable within which charges must be

brought and arrests made. We note, however, that with respect to charges that the prosecutor chooses not to include in the initial complaint, the defendant's interests are protected by the applicable statute of limitations, the due process clause of the fifth amendment, the general sixth amendment right to a speedy trial, and the power of the court to dismiss a case in its entirety. *See* Fed.R.Crim.P. 48(b); *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977).

construe this language to so restrict Pollock's appeal.

### 2. Timeliness of Pollock's objection

■ Pollock's initial Speedy Trial Act objection was also timely. Section 3162(a)(2) of the Act states that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." While section 3162(a)(2) only covers dismissals for failure to bring the defendant to trial within the statutorily required 70 days from indictment, we find this same time limit to apply to Speedy Trial Act objections for failure to indict within the prescribed time frame under section 3262(a)(1). First, the language on waiver purports to apply to "the right to dismissal under *this section,*" (emphasis added), and section 3162 requires dismissal of charges if either defendant's indictment or trial is not timely. *See United States v. Bittle,* 699 F.2d 1201, 1207 n. 15 (D.C.Cir.1983). Second, Congress clearly intended that the courts and the government, not the defendant, assume primary responsibility for ensuring that criminal trials proceed expeditiously. *See United States v. Nance,* 666 F.2d at 358; *United States v. Rivera,* 427 F.Supp. 89, 91 (S.D.N.Y.1977); *United States v. Lopez,* 426 F.Supp. 380, 387 (S.D.N.Y.1977). In light of this intention we will not construe the Act to require a defendant to press at every juncture for quick adjudication of his case. Third, the general rule is that a criminal defendant must object to defects in the indictment prior to trial, not prior to indictment. Fed. R.Crim.P. 12; *see United States v. Tercero,* 640 F.2d 190, 195 (9th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). We find, therefore, that a defendant's right to object to not being indicted in a timely fashion is not waived upon indictment though the objection must be raised prior to trial. *But see* H.R.Rep. No. 390, 96th Cong., 1st Sess. 3, *reprinted in Partridge, supra,* at 222 ("as a practical matter, such a motion will be necessary to bring the matter to the attention of the court in the *pre-indictment* phase of the proceedings.") (emphasis added).

### 3. Appellate review

■ There remains the question whether this court can, *sua sponte,* recognize that the defendant was not indicted within the prescribed time period. The parties and the court below failed to raise the specific issue of the timeliness of the defendant's indictment even conceding the validity of the purported exclusions. Ordinarily failure to raise an issue in the court below precludes review of that issue in this court. In this instance, however, the defect in the timing of the defendant's indictment appears on the face of the record. The defendant also made an objection to the indictment on Speedy Trial Act grounds. Although the Speedy Trial Act objection was not on this specific point, such an objection is sufficient to alert both the court below and this court to the need to examine the record to see if the defendant was indicted within the requisite number of days. We hold therefore that where the defendant makes a Speedy Trial Act objection and the indictment does not on its face comply with that Act, this court may consider such defect even if it was not specifically raised below. In this case the lower court's assumption that the indictment issued within the statutory period was clearly erroneous. *See, e.g., United States v. Nance, supra,* 666 F.2d at 356; *United States v. Fielding,* 645 F.2d 719, 721–22 (9th Cir.1981).

### II. Fourth Amendment

We next address Pollock's claim that the district court improperly denied his motion to suppress evidence gathered from the Smith residence because the search warrant did not meet the particularity requirement of the Fourth Amendment. The district court found both that Pollock did not have a legitimate expectation of privacy in the Smith residence and that the warrant met the particularity requirement. We deal with each question in turn.

## A. Standing

The case law provides virtually no guidance as to whether a district court's initial determination of standing under the fourth amendment is subject to review *de novo* as a pure ruling of law, or under a clearly erroneous standard as a mixed question of law and fact. *United States v. Mackey,* 626 F.2d 684, 687 & n. 4 (9th Cir. 1980). We need not reach that issue here, however. Although Pollock made his motion to suppress on January 24, 1983, the court did not issue its ruling until March 3, one month after the stipulated facts containing Pollock's plea of guilty were before it. Where the facts are not disputed the court may review the question of standing *de novo. See Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *Mackey,* 626 F.2d at 687 n. 4 (rationale for clearly erroneous standard is that district court is making factual findings). The evidence in the stipulated facts establishes Pollock's reasonable expectation of privacy.

Since *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), a defendant's right to challenge a search no longer depends on traditional concepts of standing. Instead, courts are to analyze such challenges in terms of substantive fourth amendment doctrine. Essentially, a defendant must demonstrate a violation of his legitimate expectation of privacy in the item seized and in the place searched. *See United States v. Salvucci,* 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). This determination involves two inquiries: first, whether the defendant has exhibited an actual, subjective expectation of privacy, and second, whether that expectation is one that society is prepared to recognize as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979).

Legitimate presence on the premises is still relevant to, although not a talisman of, a legitimate expectation of privacy. *Rakas,* 439 U.S. at 142–43, 99 S.Ct. at 429–30. For example, in *United States v. Robertson,* 606 F.2d 853 (9th Cir.1979), the court found that the defendant had such an expectation in a friend's residence where he was an overnight guest, kept possessions, and had an interest in the items seized. *Id.* at 856 n. 2. The record in this case shows that Pollock's activities in the Smith house and his interest in the laboratory met the *Robertson* criteria. The stipulated facts establish that since early 1981 Pollock and other defendants had moved their laboratory from place to place to avoid detection, that Pollock had participated in moving the equipment and chemicals that comprised the laboratory to the Smith residence, and that he used that site to manufacture significant quantities of methamphetamine. In addition, the police affidavit for the search warrant attests that the suspicious activity by the defendants in the Smith residence took place during the late night and early morning hours. Moreover, the record shows that Pollock was arrested on the premises.

In addition, a defendant who enters into an arrangement that indicates joint control and supervision of the place searched may challenge a search of the place where contraband is concealed. *See, e.g., United States v. Johns,* 707 F.2d 1093, 1099–1100 (9th Cir.1983) (airplane pilots who dropped off marijuana bales and then departed had standing to object to later search of truck carrying bales); *United States v. Perez,* 689 F.2d 1336, 1338 (9th Cir.1982) (defendants in car who followed truck containing contraband had reasonable expectation of privacy in truck). We find that because of his arrangement with Sissie Smith, and his activities in and presence on the premises at the time of the search, Pollock has met his burden of showing a reasonable expectation of privacy in the Smith residence.

## B. Particularity of Warrant

Pollock's claim that the search warrant for the Smith residence was impermissibly general is without merit. The warrant authorized the seizure of items utilized in the manufacture of methampheta-

mine, including chemicals, glassware, notes, and other narcotics paraphernalia. So long as officers can distinguish between legally and illegally possessed property on the basis of objective, articulated standards, a search warrant based on probable cause may direct inspection of premises containing a generic class of items, a portion of which are believed to be stolen or contraband. *United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir.1982). If such standards reasonably guide the officers in avoiding the seizure of protected property, a search warrant authorizing such seizure is not a general warrant. *See Andresen v. Maryland,* 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976) (upholding warrant authorizing the seizure of "other fruits, instrumentalities and evidence of crime at this [time] unknown"). In this case the officers availed themselves of the guidelines set forth in the warrant and Exhibit A attached thereto. *See United States v. Brock,* 667 F.2d 1311, 1322 (9th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). Accordingly, the warrant must be upheld.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART.