203 F.3d 614 (9th Cir. 2000)
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
PEDRO HERNANDEZ, aka Hernandez Jose Gregorio Ventura; aka Jose Gregorio Ventur Hernandez; aka Francisco Huerrera; aka Antonio Hernandez; aka Jose Delgado; aka Pedro Avalos; aka Miguel Ibarra, Defendant-Appellant.
 No. 98-50206
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 7, 1999
Decided February 11, 2000
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 COUNSEL: Stephen M. Lanthrop, Lanthrop & Villa, Redondo Beach, California, for the defendant-appellant.
 Lee S. Arian, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee. Before: Dorothy W. Nelson, Stephen Reinhardt, and Stephen S. Trott, Circuit Judges.
 Appeal from the United States District Court for the Central District of California; James M. Ideman, District Judge, Presiding[1] D.C. No. CR-97-00496-JMI-1
 Opinion by Judge Reinhardt
 REINHARDT, Circuit Judge:
 
 
 1
 Pedro Hernandez pleaded guilty to one count of illegal reentry in violation of 8 U.S.C. S 1326. He now appeals both his conviction and sentence. He asserts that the district court erred in denying his pretrial request that he be allowed to represent himself, and that this denial of his Sixth Amendment right rendered his subsequent guilty plea involuntary. Hernandez argues separately that the district court violated his Sixth Amendment rights by not permitting him to represent himself at his sentencing hearing. We agree that Hernandez's plea was involuntary and vacate his conviction. Accordingly, we need not reach the separate sentencing issue.
 
 I. BACKGROUND
 
 2
 Hernandez was deported from the United States on June 26, 1992, and May 11, 1994, after being convicted of various drug-related felonies and assault with a deadly weapon. On May 10, 1997, Hernandez was found in Los Angeles County and taken into custody. He was later charged in a two-count indictment with (1) illegal reentry as an alien into the United States following deportation and felony conviction, in violation of 8 U.S.C. S 1326(a), (b)(1); and (2) illegal reentry as an alien into the United States following deportation and conviction of an aggravated felony, in violation of 8 U.S.C. S 1326(a), (b)(2).[2]
 
 
 3
 A pretrial status conference was held on June 30, 1997. Hernandez, unhappy with his counsel's efforts and lack of communication, requested that the court appoint new counsel. Judge Ideman refused to do so. Hernandez then stated that if the court would not appoint another attorney, then he would like to represent himself:
 
 
 4
 [HERNANDEZ]: Well, I mean, if you can't change him, I'd like to represent myself, with an interpreter, if you don't want to assign [another attorney].
 
 
 5
 THE COURT: I won't give you another lawyer. You haven't given me sufficient to cause [sic] to do that. I will permit you to represent yourself if you insist on doing it. I will tell you that I think it's a mistake, particularly since you not only are apparently not legally trained, but you also do not understand or speak English. Yet, you have a Constitutional Right to represent yourself.
 
 
 6
 Following Hernandez's request to represent himself, the district judge began to question him, saying, "I'm trying to evaluate whether you have some basic capability to defend yourself." The judge engaged Hernandez in the following colloquy:
 
 
 7
 THE COURT: Do you know how much time you could receive if you're convicted of this offense?
 
 
 8
 HERNANDEZ: Well, I was told 70 to 85 or 82. I don't remember.
 
 
 9
 THE COURT: What does the government have to prove to convict you of this offense?
 
 
 10
 HERNANDEZ: Well, that I'm guilty for having come in here twice illegally, but -but, you know, I want to know why I'm getting all these points.
 
 
 11
 At this point the district judge asked Hernandez more forcefully what the government would have to prove in order to convict him, and Hernandez responded even more simply that the government would have to prove that he was guilty.[3] After this response, the judge abruptly cut Hernandez off and denied his self-representation request, stating that"[t]he Court finds the defendant is not capable of defending himself and denies his request to represent himself." On July 22, 1997, the date set for trial, Hernandez entered an unconditional plea of guilty to Count Two of the indictment.
 
 
 12
 During sentencing, Hernandez again complained about his attorney and requested that the court appoint new counsel, but did not renew his self-representation request. The district judge again denied Hernandez's request for new counsel, and sentenced him to a term of 120 months imprisonment, three years supervised release, and a special assessment of $100.
 
 
 13
 Hernandez now asks us to set aside his guilty plea on the ground that it was not voluntary and, in the alternative, to vacate his sentence on the ground that his Sixth Amendment rights were violated during sentencing.
 
 II. DISCUSSION
 
 14
 On appeal, Hernandez attacks his plea on the ground that it was not voluntary.[4] In order to be valid, a guilty plea must be "voluntary and intelligent."[5] See Tollett v. Henderson, 411 U.S. 258, 267 (1973); Brady v. United States, 397 U.S. 742, 748 (1970); McMann v. Richardson, 397 U.S. 759, 766 (1970); Boykin v. Alabama,395 U.S. 238, 242 (1969); cf. Fed. R. Crim. P. 11(e).[6] A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion, see Brady, 397 U.S. at 754-55, and is "unintelligent" if the defendant is without the information necessary to assess intelligently "the advantages and disadvantages of a trial as compared with those attending a plea of guilty."[7] Hill v. Lockhart , 474 U.S. 52, 56 (1984); see also Brady, 397 U.S. at 754.
 
 
 15
 Hernandez claims that his plea was involuntary because the district court wrongfully denied his request to represent himself and thereby coerced him into pleading guilty. The coercion, Hernandez argues, lies in the fact that he was compelled to plead guilty in order to avoid being subjected to an unconstitutional trial at which he would be prohibited from conducting his own defense. In order to establish that the district court's denial of his request to represent himself rendered his plea involuntary, Hernandez must prove two things. First, he must demonstrate that the district court's rejection of his self-representation request violated his Sixth Amendment rights. Second, he must persuade us that, by affording him only the limited choice between a trial that deprived him of his Sixth Amendment rights and an opportunity to enter a guilty plea, the court rendered his plea involuntary.
 
 A. Appealability
 
 16
 Hernandez did not challenge the voluntariness of his plea in the district court or seek to withdraw it. While ordinarily we will not consider issues not properly raised below, see United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir. 1992), we held in United States v. Anderson , 993 F.2d 1435 (9th Cir. 1993), that, because challenges to the voluntariness of a plea are questions of law, we may address those challenges when raised for the first time on appeal if "the comments by the district court [that allegedly made the plea involuntary] are all on the record [and] there is no factual dispute regarding their nature." Id. at 1437 (second alteration in original); see also United States v. Bruce, 976 F.2d 552, 55455 (9th Cir. 1992) (addressing and ultimately granting defendant's claim that he should be permitted to withdraw his plea, even though the claim was raised for the first time on appeal, because "the issue is purely legal and the facts are fully developed"). Here, the trial court's denial of Hernandez's self-representation request is on the record, there is no factual dispute about what the court said, and there is no need for any further factual information. Because a refusal to address the issue now would simply cause Hernandez to resort to a S 2255 petition, our interest in both judicial economy and the speedy vindication of constitutional rights compels us to consider the voluntariness question now. We do so with the understanding that judicial conduct that renders a plea involuntary "constitutes plain error and entitles a defendant to withdraw his guilty plea even if the error is identified for the first time on appeal." Anderson, 993 F.2d at 1437.
 
 B. Sixth Amendment Violation
 
 17
 The Sixth Amendment grants a criminal defendant the right to refuse the assistance of counsel and to represent himself in his criminal proceedings. See Faretta v. California, 422 U.S. 806 (1975). A criminal defendant's assertion of his right to self-representation must be timely and not for purposes of delay; it must also be unequivocal, as well as voluntary and intelligent.[8] See Adams v. Carroll, 875 F.2d 1441, Hernandez's competence to waive his right to counsel is not at issue in the present appeal, because the district court did not deny his selfrepresentation request on the ground that he was incompetent in the 1442 (9th Cir. 1989); United States v. Schaff , 948 F.2d 501, 503 (9th Cir. 1991); Godinez v. Moran, 509 U.S. 389, 400-02 (1993).[9] Where adefendant's waiver of his Sixth Amendment right to counsel meets these requirements, a court must permit the defendant to proceed pro se. Cf. Faretta, 422 U.S. at 81832.
 
 1. Timely and Not For Purposes of Delay
 
 18
 The government properly does not argue that Hernandez's self-representation request was untimely or for purposes of delay. We have held that a demand for selfrepresentation is timely if made "before meaningful trial proceedings have begun," see United States v. Smith, 780 F.2d 810, 811 (9th Cir. 1986), and have also held that a request is timely if made prior to jury selection, see Moore v. Calderon, 108 F.3d 261, 264 (9th Cir. 1997); Maxwell v. Sumner, 673 F.2d 1031, 1036 (9th Cir. 1982). In this case, Hernandez sought to represent himself three weeks prior to trial, making his request timely. Nor is there any evidence that Hernandez's request was calculated to delay the proceedings: Hernandez simply wanted to proceed pro se because he did not trust his appointed counsel.
 
 2. Unequivocal
 
 19
 Hernandez's request to represent himself was also unequivocal. "A defendant must make an explicit choice between exercising the right to counsel and the right to selfrepresentation so that a court may be reasonably certain that the defendant wishes to represent himself." United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994); see also Armant v. Marquez, 772 F.2d 552, 555 (9th Cir. 1985). This requirement is necessary to prevent defendants from waiving their right to counsel either inadvertently or impulsively, and also to prevent them from manipulating the mutually exclusive rights to counsel and self-representation. See Adams, 875 F.2d at 1444.
 
 
 20
 The record before us reveals that Hernandez's request was unequivocal (whether or not conditional). When the judge refused to appoint new counsel for him, Hernandez informed him straightforwardly that "if you can't change [my attorney], I'd like to represent myself, with an interpreter." The record gives no indication that Hernandez's statement constituted an emotional outburst, or anything other than a sincere and unambiguous request. Moreover, the district judge's response to Hernandez's request strongly supports the conclusion that it was unequivocal. See Reese v. Nix, 942 F.2d 1276, 1280-82 (8th Cir. 1991) (examining the trial court's response to defendant's self-representation request to determine whether the request was equivocal). When Hernandez asked to represent himself, the district judge did not brush aside his request as one might have expected if the tenor of the request had been impulsive, or seek to inquire into whether the defendant was certain of his decision; instead, the judge acknowledged the unambiguous character of the request by stating that he was willing to grant it and by then beginning a dialogue with Hernandez to determine whether it was voluntary and intelligent. Only because the district judge decided that Hernandez did not know enough about the legal issues in the case, did he "den[y] his request to represent himself."[10]
 
 
 21
 The fact that Hernandez's request may have been conditional -that is, the fact that he requested to represent himself only because the court was unwilling to grant his request for new counsel -is not evidence that the request was equivocal. Evaluating a strikingly similar conditional request in Adams v. Carroll we stated:
 
 
 22
 Here, [the defendant] made his preference clear from the start: He wanted to represent himself if the only alternative was representation by Carroll. Although his two self-representation requests were sandwiched around a request for counsel, this was not evidence of vacillation. To the contrary, each of these requests stemmed from one consistent position: Adams first requested to represent himself when his relationship with [his attorney] broke down.
 
 
 23
 875 F.2d at 1444-45 (footnote omitted); accord United States v. Robinson, 913 F.2d 712, 714 (9th Cir. 1990). Our holding in Adams -that the conditional nature of the defendant's request was not evidence of equivocation -compels the same conclusion here: whether Hernandez's request was conditional has no effect on the strong evidence that the request was unequivocal.[11]
 
 
 24
 It is true that Hernandez did not renew his request in later proceedings. This fact does not diminish the clarity of his request, however, or render it equivocal. Indeed, the district court's response to Hernandez's initial request helps to explain why Hernandez did not renew it when he decided to plead guilty rather than face trial. The district judge displayed what appeared to be impatient resistance toward Hernandez's request for self-representation, refusing to provide him with the information that would enable him to make a voluntary and intelligent waiver of his rights, and engaging in only an extremely abrupt colloquy regarding the request before denying it. Given that the basis for the judge's denial of the request was that Hernandez was incapable of putting on an effective defense, there was no reason for Hernandez to believe that on the day of trial the judge would suddenly change his mind and decide that Hernandez had become a competent trial advocate. Admittedly he had not. In circumstances such as these, where it is reasonable for a defendant to believe that a further request would be pointless, we have rejected any suggestion that a defendant must renew his request to represent himself. See Arlt, 41 F.3d at 523.
 
 
 25
 We note that after unambiguously denying Hernandez's self-representation request the district court did state that it would reconsider the "defendant's request to represent himself if he wants to persist in that on the trial date." This statement does not undermine the relevance of the holding in Arlt, because it does not change the fact that the court had already "firmly denied" Hernandez's request on the ground that Hernandez was not "capable of defending himself. " Even if the court's statement rendered Arlt facially distinguishable, it would not affect our conclusion because it does not alter the unequivocal character of Hernandez's request. As our analysis makes clear, the circumstances surrounding Hernandez's initial request demonstrate that it was unequivocal. Our cases contain no requirement that, in addition to making an unequivocal request,a defendant must reiterate that request simply because a district court has advised him that he has a right to do so. To the contrary, our cases require nothing more than a finding that a defendant's request is unequivocal. See, e.g., Armant v. Marquez, 772 F.2d 552, 555 (9th Cir. 1985). It may be true that in some instances the failure of a defendant to renew a self-representation request will provide support for the conclusion that the request was equivocal. It may also be true that a district court may under some circumstances properly reserve ruling until a later date. Here, however, the district court's ruling, like the defendant's request, was unequivocal. It stated firmly that "the Court finds the defendant is not capable of defending himself and denies his request to represent himself." Under that circumstance, it would make little sense to allow a court to strip a defendant's self-representation request of its unequivocal character merely by telling him that he may renew his request at a later date.
 
 3. Voluntary and Intelligent
 
 26
 Because Hernandez's request was timely, not for purposes of delay, and unequivocal, we must inquire into whether it was voluntary and intelligent.[12] This court has articulated the standard for determining whether a defendant's waiver of his right to counsel is voluntary and intelligent in a number of ways. Through these various articulations we have attempted to protect at the same time both the right to counsel and its corollary, the right to represent oneself. See generally United States v. Farhad, 190 F.3d 1097, 1101-09 (9th Cir. 1999) (Reinhardt, J., specially concurring) (questioning the wisdom of Faretta, as it has developed in the courts, and discussing the difficulty inherent in preserving both rights simultaneously). Although these assorted articulations differ in detail, each formulation recognizes that a careful inquiry by the district court regarding the defendant's request is essential to protecting both rights concurrently. See, e.g., U.S. v. Balough, 820 F.2d 1485, 1487 (9th Cir. 1987); U.S. v. Mohawk, 20 F.3d 1480, 1484(9th Cir. 1994).
 
 
 27
 This court has never demanded that district courts use a particular set of words or phrases when conducting the inquiry into whether a defendant's self-representation request is voluntary and intelligent. See United States v. Keen, 104 F.3d 1111, 1114 (9th Cir. 1996). We do require , however, as a precondition to accepting the request, that the defendant be made aware of the "three elements" of self-representation: he must be "made aware of (1) the nature of the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation."[13] Farhad, 190 F.3d at 1099 (emphasis added); see also Balough, 820 F.2d at 1487; Faretta, 422 U.S. at 835; Lopez v. Thompson , (9th Cir. 2000) (en banc). This requirement precludes the district court from denying a self-representation request on the ground that the defendant has not independently informed himself of these elements. Rather, as we have consistently stated, it is the responsibility of the district court to ensure that the defendant is informed of them by providing him with the requisite information. See, e.g., Keen, 104 F.3d at 1114, 1120; Arlt, 41 F.3d at 521.
 
 
 28
 In Faretta, the Supreme Court set forth plainly the courts' obligation to inform defendants of the consequences of self-representation. It held that a defendant who seeks to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.' " Faretta, 422 U.S. at 835. We have repeatedly reiterated the Court's rule, and have made it clear the obligation on the part of the district court includes informing the defendant of the nature of the charges, the possible penalties, and, even more important, the risks and pitfalls of self-representation. As we said in Keen:"Once the district court learned of [the defendant's] desire to proceed pro se, it was required to fully inform him in some manner of the nature of the charges against him, the possible penalties, and the dangers of self-representation."[14] Keen, 104 F.3d at 1120; see also Lopez, (en banc) (noting that the defendant was informed of "the nature of the charges and proceedings against him, the possible sentences . . . and the dangers of self-representation");[15] United States v. Wadsworth,830 F.2d 1500, 1504-05 (9th Cir. 1987) (reversing unrepresented defendant's conviction because district court did not "inform[ ] [the defendant] of the nature of the charges against him, the possible penalties, and the dangers of selfrepresentation"); United States v. Crowhurst , 596 F.2d 389, 390 (9th Cir. 1979) (stating that a defendant who wishes to represent himself "must specifically be made aware of the charges and their possible penalties and sanctions").[16] Accordingly, if the court fails to fulfill its obligation to inform the defendant and then denies his request to represent himself, it violates the defendant's Sixth Amendment right of selfrepresentation:
 
 
 29
 If a defendant seeks to represent himself and the court fails to explain the consequences of such a decision to him [and then denies his self representation request], the government is not enti tled to an affirmance of the conviction it subse quently obtains. To the contrary, the defendant is entitled to reversal and an opportunity to make an informed and knowing choice.
 
 Arlt, 41 F.3d at 521.[17]
 
 30
 The reason for the rule that a defendant is entitled to reversal if the court fails to explain the consequences of selfrepresentation and then denies his self-representation request is clear. Were the rule otherwise, the Sixth Amendment right to self-representation would be severely weakened. Its exercise would be wholly dependent on the whim of the district judge, or on how well the district judge understood the law. If the judge failed to perform his duties properly -if he failed, for example, to explain adequately the dangers of selfrepresentation and the consequences the defendant faced -the defendant would be penalized: his right to selfrepresentation would be forfeited by virtue of the court's error. To put it another way, the defendant's rights would be taken from him because the district judge failed to provide him with the information necessary to make an informed request. Such a rule would not only be arbitrary and unreasonable, but it would turn Faretta into a nonbinding advisory opinion for the benefit of judges instead of a constitutional rule that protects defendant's constitutional rights.[18]
 
 
 31
 In the instant case, it is clear that the actions of the district court violated Hernandez's Sixth Amendment rights. When Hernandez requested that he be permitted to represent himself, the district judge made no attempt to inform him of any of the three elements of self-representation. Rather, he proceeded to conduct an inquiry into what independent knowledge of the elements the defendant himself possessed -an inquiry that failed entirely to comport with the Faretta requirement.[19]Cf. Faretta , 422 U.S. at 835. He then denied the self-representation request on the ground that the defendant did not possess the required information.
 
 
 32
 Under any formulation of an acceptable inquiry into whether Hernandez's request was voluntary and intelligent, the district court failed to meet its obligation to provide him with information that would allow him to make a voluntary and intelligent request. Accordingly, when the district court denied Hernandez the right to self-representation, it violated his constitutional rights under the Sixth Amendment.
 
 C. Involuntary Plea
 
 33
 Because we conclude that the district court wrongly denied Hernandez's request to represent himself, we must determine whether the court's error rendered his plea involuntary. A guilty plea is involuntary if it is the product of threats, improper promises, or other forms of wrongful coercion. See Brady, 397 U.S. at 754-55. Not all forms of coercion are wrongful, of course; after all, "[t]he State to some degree encourages pleas of guilty at every important step in the criminal process." Id. at 750. Nevertheless, if the district court's erroneous Faretta ruling "imposed unreasonable constraints on [Hernandez's] decisionmaking process," it rendered Hernandez's plea involuntary. Anderson, 993 F.2d at 1438.
 
 
 34
 To understand the effect of the district court's error on Hernandez's decisionmaking process, we must consider what sort of choice the error left him with at the plea stage. When the district court wrongly denied Hernandez's request to represent himself, Hernandez was left with the following choice: either plead guilty or submit to a trial in which you will be deprived of a fundamental Sixth Amendment right. The Supreme Court has held that the denial of a defendant's Sixth Amendment right to conduct his own defense is a structural error -an error that undermines the integrity of the trial mechanism itself. See Makaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984); Arizona v. Fulminante, 499 U.S. 279, 310 (1990); Neder v. United States, 119 S. Ct. 1827, 1833 (1999). Therefore, the district court's refusal to allow Hernandez to exercise the right of self-representation forced him to choose between pleading guilty and submitting to a trial the very structure of which would be unconstitutional.
 
 
 35
 In this light, it is clear that the district court's wrongful refusal of Hernandez's self-representation request imposed "unreasonable constraints" on his decision whether to plead guilty. To be voluntary, a plea must be one in which the defendant is permitted to choose between pleading guilty and undergoing a trial that comports with the fundamental principles the Constitution imposes. Were it otherwise, a plea would be valid even if procured by a court ruling that, absent a plea, a criminal defendant would be required to proceed to trial without counsel, or to submit to a trial before a biased judge. Cf. Brady, 397 U.S. at 748 n.6 (noting that "[s]ince Gideon v. Wainright, it has been clear that a guilty plea to a felony charge entered without counsel and without a waiver of counsel is invalid." (citation omitted)). Obviously, this is not the law.When a defendant is offered a choice between pleading guilty and receiving a trial that will be conducted in a manner that violates his fundamental Sixth Amendment rights, his decision to plead guilty is not voluntary, for in that case, he has not been offered the lawful alternatives -the free choice -the Constitution requires.
 
 
 36
 By improperly denying his self-representation request, the district court deprived Hernandez of the choice between the only two constitutional alternatives -a plea and a fair trial. For this reason, we conclude that the district court "imposed unreasonable constraints" on Hernandez's decisionmaking, and that Hernandez's plea was involuntary.
 
 IV. CONCLUSION
 
 37
 We hold that the district court violated Hernandez's Sixth Amendment rights when it denied his request to represent himself. We further hold that this constitutional violation rendered Hernandez's plea involuntary by depriving him of a choice between the only two constitutional alternatives -pleading guilty and receiving a fair trial -and leaving him instead with the choice between pleading guilty and submitting to an unconstitutional trial. Hernandez's conviction is vacated and the case remanded to the district court for further proceedings consistent with this opinion.[20]
 
 
 38
 VACATED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Judge Ideman was a United States District Judge at the time of the proceedings we review. He has since retired and returned to his former role as a state court judge.
 
 
 [2]
 Although Hernandez was indicted on two separate counts, both relate to the same illegal reentry and he could be convicted and sentenced on only one of them. The duplication does not present a problem on appeal, however, because Hernandez pled only to Count 2. We should also note that S 1326(b)(1) & (b)(2) are sentencing enhancements and not offenses. See Almendarez-Torres v. United States, 118 S. Ct. 1219, 1222 (1998).
 
 
 [3]
 Hernandez's full answer to the court's question was, "Well, I am guilty." The government argues that by this response Hernandez was admitting his guilt. We disagree. In the context of the court's question, the more reasonable interpretation is that Hernandez was simply responding -albeit in an abrupt manner -that the government would have to prove that he was guilty. This understanding of his response is even more plausible when we consider the fact that Hernandez was speaking through a translator. In any event, his response is of little relevance to our analysis.
 
 
 [4]
 Hernandez also appears to attack his plea as "unintelligent" by arguing that his attorney did not represent him competently with respect to his selfrepresentation request and failed to advise him adequately of his rights regarding the plea. Because we conclude that Hernandez's plea was not voluntary, we do not address this argument.
 
 
 [5]
 The Supreme Court has generally distinguished between the requirement that pleas be "voluntary" and the requirement that they be "intelligent." See, e.g., Brady, at 749-58; Parker, 397 U.S. at 794-98. According to the Court, the "voluntariness" of a plea turns on the extent to which a defendant is permitted to make a free choice among the acceptable alternatives available at the plea stage. The "intelligence" of a plea, on the other hand, turns on whether the defendant's choice among those alternatives is made with the information (and an understanding of the information) necessary to choose intelligently between them. While the distinction between these two conceptual categories is somewhat imperfect, and while we have occasionally used the two terms interchangeably, see, e.g., United States v. Floyd, 108 F.3d 202, 204 (9th Cir. 1997), it is useful for purposes of this opinion to differentiate between claims of involuntariness and claims of unintelligence.
 
 
 [6]
 On occasion, the Supreme Court and this court have described the "voluntary and intelligent" requirement using slightly different language. See, e.g., Parke v. Raley, 506 U.S. 26, 28-29 (1992) (describing the standard both as "knowing and voluntary" and as "voluntary and intelligent"); Boykin v. Alabama, 395 U.S. 238, 241-42 (1969) (describing the standard both as "voluntar[y] and knowing[ ]" and as "intelligent and voluntary"); United States v. Cortez, 973 F.2d. 764, 767 (9th Cir. 1992) (describing the standard as "knowing and voluntary").
 
 
 [7]
 A plea is unintelligent, therefore, if a defendant's plea decision is based on advice from counsel that is not "within the range of competence demanded of attorneys in criminal cases," McMann, 397 U.S. at 771; see also Hill v. Lockhart, 474 U.S. 52, 56 (1985); Brady, 397 U.S. at 756, or if a defendant for any other reason lacks "sufficient awareness of the relevant circumstances and likely consequences" of a plea. See Brady, 397 U.S. at 760. For examples of attacks on the intelligence of pleas in this circuit, see, e.g., Floyd, 108 F.3d at 204; United States v. Cortez, 973 F.2d 764, 767-68 (9th Cir. 1992); United States v. Carrasco, 786 F.2d 1452, 1454-55 (9th Cir. 1986).
 
 
 [8]
 In addition to meeting the basic requirements discussed in the text, a defendant must also be competent in order to waive his constitutional right to counsel. In Godinez v. Moran, 509 U.S. 389 (1993), the Supreme Court held that a defendant's competence to waive the right to counsel is measured by the same standard under which competence to stand trial is evaluated. See id. at 397-400. The standard for competence to stand trial requires nothing more than that a defendant have some minimal understanding of the proceedings against him. See Godinez, 509 U.S. at 396. In Godinez, the Supreme Court rejected this circuit's more stringent requirement that a defendant who seeks to waive counsel must demonstrate the capacity for "reasoned choice" among the alternatives available to him before he will be permitted to represent himself. See id. at 398; Moran v. Godinez, 972 F.2d 263, 266-67 (9th Cir. 1992). While the Court's basic holding, standing alone, could plausibly be interpreted as undermining the requirement that the waiver of counsel be "voluntary and intelligent," the Court specifically preserved this requirement in Godinez: "A finding that a defendant is competent to stand trial . . . is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. In this sense there is a `heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence." 509 U.S. at 400-01. The Court distinguished the competency inquiry from the "voluntary and intelligent" inquiry on the ground that the focus of the former "is the defendant's mental capacity," while the purpose of the latter is to determine "whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." Id. at 401 n.12.
 Godinez sense. Instead, the court denied his request -after asking Hernandez several technical legal questions relating to his potential sentence and the government's burden of proof -on the ground that "the defendant is not capable of defending himself." Therefore, it appears that the court based its denial of Hernandez's request on its conclusion that Hernandez did not have the information reasonably necessary to put on an effective defense, and that this lack of knowledge prevented his waiver from being "voluntary and intelligent." See infra note 12.We note that if we were to read the court's conclusion as a holding that Hernandez was incompetent (in the sense used in Godinez) to waive his right to counsel, it would not assist the government. In that case, we would unquestionably be required to vacate Hernandez's plea. As Godinez made clear, the competence required to waive one's right to counsel is no different than that required to stand trial or plead guilty. See 509 U.S. at 398400. Thus, if the district court had actually concluded that Hernandez was incompetent to waive his counsel, then by definition Hernandez was also incompetent to plead guilty. See id. In any event, there is no showing in the record that Hernandez was mentally incompetent.
 
 
 [9]
 As in the context of guilty pleas, see supra note 5, both the Supreme Court and this court have sometimes described the "voluntary and intelligent" requirement using slightly different language. See, e.g., Godinez, 509 U.S. at 402 (describing the standard both as "knowing and voluntary" and as "intelligent and voluntary"); Faretta, 422 U.S. at 835 (describing the standard as "knowing and intelligent"); Adams v. Carroll, 875 F.2d at 1442 (same).
 
 
 [10]
 Hernandez's counsel also understood that Hernandez had requested the right to represent himself. As Hernandez's counsel stated during the sentencing proceedings: "[w]hen the court questioned Mr. Hernandez about his convictions, he had already asked . . . to represent himself under Faretta." In fact, there is no indication in the record that there was any confusion or uncertainty on anyone's part about the nature of Hernandez's request.
 
 
 [11]
 The government argues that Jackson v. Ylst, 921 F.2d 882 (9th Cir. 1990), requires that we find Hernandez's request equivocal. Jackson was also a case in which the trial court denied a self-representation request made by a defendant in response to the trial court's denial of his request for substitute counsel. We affirmed, holding that the defendant's request was equivocal because it amounted to nothing more than an emotional outburst in response to the judge's ruling. See Jackson, 921 F.2d at 888. In marked contrast to the record in Jackson, which revealed the defendant's request to be an impulsive, emotional outburst, there is nothing in the record here that suggests that Hernandez's request was anything other than sincere and unambiguous. Moreover, in Jackson the state court judge apparently ignored the defendant's outburst and made no Faretta inquiry -suggesting that the judge perceived the request as only an impulsive remark. See id. at 888-89. Here, the district judge accepted Hernandez's request as unequivocal and proceeded to conduct a Faretta colloquy.
 
 
 [12]
 The district judge denied Hernandez's self-representation request on the ground that Hernandez was uninformed about what the government would have to prove regarding the charges against him and what the length of his sentence might be, and that Hernandez was "not capable of defending himself." The most generous interpretation of the denial is that the district judge considered the question to be whether Hernandez's proposed waiver of his right to counsel was "voluntary and intelligent" and that he believed that the answer turned on whether Hernandez had sufficient information regarding the charges against him and the possible penalties. See supra note 8. For purposes of our analysis, we adopt this understanding of the district court's reason for denying Hernandez's request. There are two other possible explanations why the district judge denied the request, but either of these explanations would clearly require us to vacate Hernandez's plea. First, we could conclude that the district judge denied Hernandez's request because he believed that Hernandez lacked the legal skill necessary to put on a capable defense, rather than because he thought Hernandez lacked necessary information about the proceedings against him. Such a reading would require reversal, because neither the lack of technical legal competence nor the inability to put on an effective defense constitutes a legitimate ground for denying the right of self-representation. See Martinez v. Court of Appeals of California, 120 S.Ct. 684, 145 L.Ed.2d 597 (U.S. Jan. 12, 2000); Lopez v. Thompson, 202 F.3d 1110. Second, we could treat the denial as being based on the ground that the defendant was not mentally competent to make such a waiver. As we have previously explained, if the denial was based on this ground the district court's error would be exceedingly clear. See supra note 8. the district court regarding the defendant's request is essential to protecting both rights concurrently. See, e.g., United States v. Balough, 820 F.2d 1485, 1487 (9th Cir. 1987); United States v. Mohawk, 20 F.3d 1480, 1484 (9th Cir. 1994).
 
 
 [13]
 In cases in which the district court grants the defendant's selfrepresentation request, there is a limited exception to the rule that the district court must inform the defendant of these three elements. We have held that "a limited exception may exist whereby a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver. Absent a district court's discussion of the three elements, we will look to `the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused' to determine whether the waiver was voluntary and intelligent . . . ." Balough, 820 F.2d at 1488 (citations omitted) (quoting United States v. Kimmel, 672 F.2d 720, 722 (9th Cir. 1982))."Our cases have consistently held, however, that this `limited exception [is] to be applied in rare cases.' " Id. (alteration in original) (quoting United States v. Harris, 683 F.2d 322, 324 (9th Cir. 1982)). Even if this exception applied to the present case -thereby permitting us to search the record for evidence that the defendant's waiver was informed -any evidence that Hernandez's waiver was voluntary and intelligent would only strengthen his claim that he was wrongfully deprived of his right to represent himself. The exception is self-evidently of no use to the government in a case in which the district court denies the defendant's self-representation request.
 
 
 [14]
 Even outside the context of self-representation requests, defendants have the constitutional right to be furnished with information regarding various aspects of the proceedings against them. For example, the text of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI.
 
 
 [15]
 In Lopez, a state habeas case, we stated that no specific colloquy was required in order to determine whether a defendant's waiver of his right to counsel is knowing and voluntary. We then analyzed the record to determine whether the "trial court made [the defendant] `aware of the dangers and disadvantages of self-representation.' " Id. 202 F.3d at 1117 (quoting Faretta, 422 U.S. at 435). We held that this test was met, concluding that the defendant "was informed of the nature of the charges and proceedings against him, the possible sentences that might be imposed (including possible sentence enhancements), and the dangers of self-representation." Id. 202 F.3d at 1118
 
 
 [16]
 While we have sometimes stated the obligation of district courts to inform defendants of their Faretta rights in terms of a "preferred procedure," we were referring, of course, to the specific means of providing the requisite information, not to the fundamental obligation to comply with Faretta. It is beyond challenge that district courts must adequately advise defendants of the pitfalls and dangers of self-representation. In order to do so defendants must be made aware, inter alia, of the consequences they face.
 
 
 [17]
 In cases in which the court has granted the defendant's request and we have held that the defendant did voluntarily and intelligently waive his right to counsel, we have regularly emphasized the importance of the fact that the district court "appraised [defendant ] of the charges against him, the possible penalties, and the dangers of self-representation." United States v. Van Krieken, 39 F.3d 227, 229 (9th Cir. 1994); accord Moran v. Godinez, 57 F.3d 690, 699 (9th Cir. 1995); United States v. Lorenzo, 995 F.2d 1448, 1457 (9th Cir. 1992). But see supra note 13.
 
 
 [18]
 We do not here argue in favor of the wisdom of Faretta. We simply acknowledge that it is the law, and that, until it is overruled by the Supreme Court, we and the district court alike must adhere to it. See Farhad, 190 F.3d at 1100-01.
 
 
 [19]
 The district judge first asked the defendant: "Do you know how much time you could receive if you're convicted of this offense?" When Hernandez gave a rough estimate and said that he could not remember exactly, the district judge did not inform him of the possible penalties for illegal reentry. Instead, he moved on to the next element and asked: "What does the government have to prove to convict you of this offense?" Hernandez's response that the government had to prove that he was "guilty for having come here twice illegally" demonstrated less than a complete understanding of the charge; but the response did not lead the district judge, as it should have, to explain the charge to Hernandez. In fact, his next (and last) step was to question Hernandez more forcefully: "I'm asking you to tell me what the government has to prove to convict you of the offense you're charged with. What do they have to prove to the jury to convict you? Tell me."
 
 
 [20]
 In light of our conclusion that Hernandez's plea must be vacated, we do not reach the sentencing issue.