UNITED STATES of America, Plaintiff–Appellee,

v.

Domingo LOPEZ–OSUNA, Defendant–Appellant.

No. 99–50627.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 2000.

Filed Nov. 7, 2000.

Amended March 16, 2001.

---

Martha M. Hall, DiIorio & Hall, APC, San Diego, California, for the defendant-appellant.

Anne K. Perry, (Argued), Assistant United States Attorney, San Diego, California, and Paul C. Johnson, Jr. (On the Briefs), Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: NOONAN, TROTT, and BERZON, Circuit Judges.

## ORDER

The Opinion filed November 7, 2000, and appearing at 232 F.3d 657 (9th Cir.2000) is amended as follows:

1. Page 662, third full paragraph (beginning with "The government disagrees ..."), line 6 thereof, delete "on the section 1326 charge" and replace with "on January 14, 1999".

2. Page 662, the final paragraph (beginning with "Here, Lopez waived ..."), delete the first full sentence beginning with "Here" and ending with "government.", and replace with "Here, Lopez made a decision to permit the government to file new charges on January 14, 1999, without the need for an indictment."

3. Page 663, delete the entire paragraph beginning with "Moreover, Lopez ..." and ending with "Speedy Trial Act.", and replace with "Lopez made a conscious decision to participate to his benefit in these other proceedings. In the alternative, he could have asserted at that time his

speedy trial rights with respect to the initial complaint charging him with a violation of section 1326, but he chose not to. All time was excludable after Lopez waived indictment for as long as the information was pending. This excludable period began on January 14, 1999, two days before the thirty-day arrest-to-indictment period ran. Accordingly, there was no violation of the Speedy Trial Act[3]."

4. Page 663, second full paragraph (beginning with "We reject ..." and ending with "is distinguishable."), delete "Ramirez–Cortez never waived indictment on the section 1326 charge and there was no information pending on any other charges.", and replace after the colon with "no "other proceeding" was pending in which Ramirez–Cortez had consented to proceed and waived indictment."

With these amendments, the panel as constituted above has voted to deny the petition for rehearing. Judges Trott and Berzon have voted to deny the petition for rehearing en banc, and Judge Noonan so recommends.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on it. Fed. R.App. P. 35(b).

The petition for rehearing and the petition for rehearing en banc are DENIED.

## OPINION

TROTT, Circuit Judge:

Domingo Lopez–Osuna ("Lopez") appeals his felony conviction on a one count indictment for being a deported alien found in the United States, in violation of 8 U.S.C. § 1326 ("section 1326"). Lopez contends that his conviction should be reversed because the delay between his arrest and indictment violated the preindictment provision of the Speedy Trial Act, 18 U.S.C. § 3161(b) ("Speedy Trial Act" or the "Act"). Alternatively, Lopez asserts that the district court erred in finding a

knowing and voluntary waiver of counsel and allowing him to represent himself. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we **AFFIRM**.

## BACKGROUND

### I Factual Background

On December 8, 1998, Lopez was deported to Mexico. Shortly before midnight on December 15, 1998, Border Patrol Agent Sean Huntsman found Lopez and another man lying in the bushes near Highway 94 and Bear Lake Road in San Diego County. Both men were taken into custody and transported to the Highway 94 checkpoint for processing.

At the checkpoint, Lopez was interviewed by Border Patrol Agent Jason Smith ("Smith"), who read Lopez his *Miranda* rights. Lopez waived these rights and made a statement to Smith. In this statement, Lopez admitted that he was a Mexican citizen, that he had been previously deported, and that he never applied for re-admittance into the United States.

### II Procedural Background

Lopez was arrested on December 15, 1998. Two days later, on December 17, 1998, he was arraigned on a one count complaint charging him with a violation of "Title 8, U.S.C., section 1326—Deported Alien Found in the U.S. (Felony)." Soon thereafter, the government made Lopez an offer, which was intended to be part of a plea agreement, where the government agreed to forego charging Lopez with a violation of section 1326 if he pled guilty to one felony count and one misdemeanor count of violating 18 U.S.C. § 1325 (illegal entry) ("section 1325"). This offer, which included a stipulated sentence of 30 months, was made pursuant to the "fast-track" program, which was meant to benefit defendants, promote efficiency, and expedite prosecution in illegal re-entry cases in the Southern District of California.

Lopez's preliminary hearing was initially scheduled for December 31, 1998, sixteen

days after his arrest, but was continued until January 14, 1999. On January 11, 1999, Tony Cheng, a lawyer with the Federal Defenders of San Diego, Inc. and defense counsel for Lopez, informed Assistant United States Attorney John Kraemer that Lopez had accepted the government's offer to dispose of his charges. Hence, at the hearing on January 14, 1999, Lopez waived indictment and consented to proceed by way of information, which charged him with the two violations of section 1325. The information was filed on this same day, given the district court case number of 99–CR–0121–J, and the case was set for a "disposition hearing," i.e., guilty plea, on January 25, 1999.

Because the district court twice rescheduled the disposition hearing, it did not take place on January 25, 1999, and ultimately was set for February 22, 1999, close to one month later. On February 22, 1999, Cheng told the district court that "my client is indicating that he wishes to plead without the benefit of the plea agreement. I don't believe it's in his best interest, and I would like to discuss this matter with him further." Accordingly, the district court again continued the disposition hearing, this time until March 8, 1999.

On March 8, 1999, Lopez's counsel moved for another continuance so that Lopez could be evaluated by a psychiatrist to assess his mental competency. The court granted the motion and continued the case until April 5, 1999. The district court also filed a minute order excluding from a Speedy Trial Act computation the time from March 8 to April 5 under section 3161(h)(1)(A) of the Act. This section allows time to be excluded for any proceeding to determine the mental competency of the defendant. *See* 18 U.S.C. § 3161(h)(1)(A).

On April 5, 1999, the planned hearing did not occur and there is no minute order in the court file continuing the hearing. The next status hearing was held on April 12, 1999. At this hearing, counsel for Lopez requested another four-week continuance, indicating that the psychiatrist ap-

pointed by the court had not yet begun the examination of Lopez. The district court continued the case and filed another minute order excluding time from April 12 to May 10 under section 3161(h)(1)(A) of the Act. On May 10, 1999, the case was again continued for the competency examination, and the district court filed another minute order finding excludable delay from May 10 to June 14 under section 3161(h)(1)(A).

On June 14, 1999, Cheng requested to be relieved, on the grounds that Lopez refused to follow his advice. When the court offered to appoint new counsel, Lopez said he wanted to represent himself. The district court then continued the matter to June 21, 1999.

On June 21, 1999, the district court found that, pursuant to the psychological exam, Lopez was competent to stand trial. After briefly discussing the pending charges with Lopez, who was representing himself, and his advisory counsel, Martha Hall ("Hall"), who had just been appointed, the court continued the matter until July 6, 1999, to give Lopez and Hall reasonable time to prepare. In addition, the court filed a third minute order, this time finding excludable delay from June 14 to July 6 under section 3161(h)(8)(B)(iv)(4) of the Act, which allows time to be excluded for "effective preparation."

At the July 6, 1999 hearing, Hall informed the court that Lopez did not want to plead guilty to the lesser charges negotiated with the government as originally planned. Accordingly, the district court set the matter for trial on July 13, 1999. On July 7, 1999, the government filed an indictment against Lopez, charging him with a violation of section 1326. The indictment was filed as a different case from the earlier information and given a new district court criminal case number, 99–CR–1961–J.

On July 12, 1999, Lopez was arraigned on the indictment. On the same day, the government made a motion to dismiss this information in the earlier case, number 99–CR–0121–J, which the court granted and vacated the scheduled trial date of July 13,

1999.[1] At this time, Lopez's advisory counsel, Hall, moved to dismiss the recent indictment on the basis that the Speedy Trial Act had been violated. The district court preliminarily discussed the merits of the motion with the government and Hall. Ultimately, however, the court asked Lopez whether he wanted to have his motion heard or go to trial. The court stated "[d]o you want to go to trial tomorrow or do you want to have the motion filed by Ms. Hall, your advisor, heard probably in three to four weeks." Lopez answered the court by saying "any way he wants." In response, the court explained that the decision was up to Lopez, and continued with "[i]f we go to trial, we can't hear the motions. If we hear the motions, we can't go to trial. That's really what you have to decide." Lopez answered the court with a complete non-sequitur and said, "[o]ne time when we spoke before he said that you could not give me more than 42 months." After some further conversation between the court and Lopez, the court again posed the question to Lopez regarding the Speedy Trial Act motion and going trial, to which Lopez responded "[n]o. It's fine. Tomorrow for the trial." The court ended the exchange with "[o]kay, we'll proceed with the trial tomorrow."

The next day, July 13, 1999, Lopez represented himself during a one day jury trial on the section 1326 felony illegal reentry charge. Lopez declined to make an opening statement and cross-examined only two witnesses. The jury found Lopez guilty on the single count charged in the indictment. On September 27, 1999, the district court sentenced Lopez to 77 months in custody, to be followed by three years of supervised release. Lopez now appeals from his conviction.

## DISCUSSION

### I Speedy Trial Act

Lopez contends that his conviction should be reversed, because the delay be-

tween his arrest and indictment violated the preindictment provision of the Speedy Trial Act. This argument is without merit.

■ We review a district court's application of the Speedy Trial Act de novo. *See United States v. Hall,* 181 F.3d 1057, 1061 (9th Cir.1999).

### A. *Waiver*

■ As a preliminary matter, the government argues that, because Lopez elected to proceed to trial on July 13, 1999, he waived his right to raise any argument regarding preindictment delay under the Speedy Trial Act. The government is incorrect.

Before proceeding to trial, Hall, Lopez's advisory counsel, moved to dismiss the charges against Lopez on the ground that the Speedy Trial Act had been violated. The government filed a response to Hall's motion. At this time, the district court should have ruled on the issue or set a date on which to hear argument. Rather than do either, however, the district court asked Lopez whether he wanted to have the motions heard or go to trial. It was clear, as indicated by the conversation between the court and Lopez set out above, that Lopez did not fully understand the import of the choice he was faced with: going to trial *or* having a potentially dispositive motion heard. It was improper for the district court to pose this question to Lopez under the circumstances, and we conclude that Lopez did not knowingly and intelligently waive his right to raise the Speedy Trial Act issue. *See also United States v. Ramirez–Cortez,* 213 F.3d 1149, 1156 (9th Cir.2000) (defendant cannot waive the protections of the Speedy Trial Act indictment clock by stipulating to a continuance).

### B. *Preindictment Delay*

■ The Speedy Trial Act requires that "[a]ny information or indictment

---

1. The district court formally terminated case number 99–CR–0121–J by signing a judgment of discharge in that case on July 12, 1999.

charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). After this time, the government may indict on new charges, or it may abandon the original charges upon which the defendant is held,' but it may not indict on the same charge for which the defendant was arrested. *Id.* The sanction for violating the thirty-day time period is that the government either must drop the charges or the court must dismiss the indictment against the defendant. *Id.* § 3162. The trial court may dismiss with or without prejudice. *See United States v. Pollock,* 726 F.2d 1456, 1459 (9th Cir.1984).

There are certain periods of delay which are excludable under section 3161(h) of the Act and, thus, do not count in computing whether the thirty-day deadline has run. *Id.* § 3161(h). For example, the Act allows time to be excluded in specific scenarios, such as when there are "other proceedings" involving the defendant, *see* 18 U.S.C. § 3161(h), as well as in the broader circumstance where "the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(8)(A). This discretionary category has come to be known as an "ends of justice" exclusion. *See, e.g., Pollock,* 726 F.2d at 1461.

■ Lopez was arrested in San Diego on December 15, 1998, and a formal complaint charging him with a violation of section 1326 was filed two days later, on December 17, 1998. The charge filed on this date started the thirty-day clock running on the period between arrest and indictment. *See United States v. Candelaria,* 704 F.2d 1129, 1131–32 (9th Cir.1983); *see also United States v. Blackmon,* 874

F.2d 378, 381 (6th Cir.1989) ("A defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending."). Counting ahead thirty days, excluding the day of arrest but including Saturdays, Sunday, and holidays, *see Pollock,* 726 F.2d at 1460 n. 6, the indictment should have been returned no later than January 16, 1999. Lopez was indicted on July 7, 1999 and, thus, argues that the Speedy Trial Act was violated and the charges against him should be dismissed in accordance with section 3162 of the Act.[2]

The government disagrees and argues that much of the time between Lopez's arrest and indictment on July 7, 1999, should be excluded from Speedy Trial Act computations under section 3161(h)(1) for "other proceedings," because Lopez waived indictment on January 14, 1999 and agreed to proceed with an information on the section 1325 misdemeanor and felony counts. We agree with the government.

Section 3161(h)(1) provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed ... [including] [a]ny period of delay resulting from *other proceedings* concerning the defendant." *Id.* (emphasis added). This section sets forth certain types of proceedings that are included in the phrase "other proceedings," such as a trial with respect to other charges against the defendant, or a pending pretrial motion. *See id.* § 3161(h)(1)(D), (F).

■ Here, Lopez made a decision to permit the government to file new charges on January 14, 1999, without the need for an indictment. On this same day, per the agreement, the government filed an information on the section 1325 misdemeanor and felony charges, which remained pending as a criminal case during the entire time leading up to Lopez's indictment on

**2.** Section 3162(a)(1) provides that: "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by sec-

tion 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

July 7, 1999. Both parties contemplated that Lopez would plead guilty to these charges, and it was under this assumption that Lopez initially waived indictment. Though similar, sections 1325 and 1326 are separate offenses, with some separate elements. The statute expressly includes within the "other proceedings" exemption "delay resulting from trial with respect to other charges against the defendant." 18 U.S.C. § 3161(h)(1)(D). This provision encompasses "not only ... the trial itself but also the period of time utilized in making necessary preparations for trial." *United States v. Lopez–Espindola*, 632 F.2d 107, 110 (9th Cir.1980). We therefore hold with respect to the indictment in our case on appeal under the district court number 99–CR–1961 that the pendency of the information under case number 99–CR–0121–J was an "other proceeding" for purposes of the Act.

Lopez made a conscious decision to participate to his benefit in these other proceedings. In the alternative, he could have asserted at that time his speedy trial rights with respect to the initial complaint charging him with a violation of section 1326, but he chose not to. All time was excludable after Lopez waived indictment for as long as the information was pending. This excludable period began on January 14, 1999, two days before the thirty-day arrest-to-indictment period ran. Accordingly, there was no violation of the Speedy Trial Act.[3]

We reject Lopez's reliance on our recent decision in *United States v. Ramirez–Cortez*, 213 F.3d 1149 (9th Cir.2000), another "fast-track" illegal re-entry case in which we held that "negotiation of a plea bargain is not one of the factors supporting exclusion under the Speedy Trial Act." *Id.* at 1155 (internal quotation and citation omitted). Although superficially similar, the two cases are different in one critical re-

spect: no "other proceeding" was pending in which Ramirez–Cortez had consented to proceed and waived indictment. The delay in that case was occasioned by Ramirez's requests for continuances to "work on a plea agreement" and to "further investigate a derivative citizenship claim." *Id.* at 1152. Ultimately, Ramirez decided to reject the government's proposed fast track disposition. As such, the "other proceedings" and the waiver of the indictment that form the basis of our holding here were not present in *Ramirez* and, therefore, that case is distinguishable.

Lopez's rights under the Speedy Trial Act were not violated in this case, and we will not dismiss the charges filed against him.

## II Waiver of the Right to Counsel

As an alternative ground for reversing his conviction, Lopez argues that the district court erred in allowing him to represent himself in the one day jury trial on July 13, 1999. Specifically, Lopez argues that (1) because he did not understand the charges brought against him, he did not knowingly and intelligently waive his Sixth Amendment right to counsel; and (2) because he was unable to control his behavior in court and follow proper courtroom procedure, he should not have been allowed to represent himself. Lopez's argument is unpersuasive, and we conclude that the district court correctly recognized Lopez's right of self-representation.

■ Whether a waiver of the right to counsel was made knowingly, intelligently, and voluntarily is a mixed question of law and fact, which we review de novo. *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir.1990).

■■ The Sixth Amendment grants a criminal defendant the right to refuse the

---

**3.** We also note that the continuances to assess Lopez's mental competency and to allow him time for effective preparation were properly granted under section 3161(h)(1)(A) and (h)(8), respectively. Nevertheless, absent Lopez's waiver of indictment and the "other

proceedings" on the section 1325 information, this excludable time would not have saved the government from a Speedy Trial Act violation, because these continuances came well after the January 16, 1999 deadline.

assistance of counsel and to represent himself in criminal proceedings. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Despite this general rule, the Supreme Court has identified two instances in which an accused's right to represent himself may be overridden by other concerns. First, the defendant must "knowingly and intelligently forgo[ ] his right to counsel." *McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Second, he must be "able and willing to abide by rules of procedure and courtroom protocol." *Id.* If a defendant cannot satisfy these two requirements, the district court may deny him the right of self-representation. Lopez argues that he was unable to meet these requirements.

### A. *Knowing and Intelligent Waiver of Counsel*

In order for a waiver of the right to counsel to be knowing and intelligent, the defendant must be made aware of the "three elements" of self-representation: "(1) the nature of the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation." *United States v. Hernandez,* 203 F.3d 614, 623–24 (9th Cir.2000).

Lopez does not dispute that he was made aware of the dangers of self-representation or the possible penalties he could face if convicted, and the record is replete with admonitions by the district court on both issues. Instead, Lopez claims that he did not understand the charges he was facing at trial. To support this claim, in addition to several instances where he seemed confused and unfocused, Lopez cites to his conversation with the district court on July 12, 1999, the day before his trial. At this time, the court was attempting to explain the proceedings to Lopez and asked Lopez if he knew the elements of the crime of which he was charged. Lopez responded "No." The district court then asked whether Lopez knew the statutory defenses of the crime for which he was charged. Lopez again answered "No."

After hearing Lopez's negative responses, the district court should have informed him of the pending charges before proceeding any further. *See id.* at 624 (stating that "it is the responsibility of the district court to ensure that the defendant is informed of [the charges] by providing him with the requisite information."). The court did not do this. Instead, it proceeded with further questions, many of which Lopez could not answer.

Nevertheless, despite the fact that Lopez told the court on July 12, 1999, that he did not know what charges were pending against him, there were conversations between the court and Lopez at earlier hearings where the charges were discussed more fully and Lopez clearly understood them. *See, e.g.,* ER at 53 (The court: "You were released on December 7, 1998. You came back on December 15, 1998. Eight days later, after the time you were released, you came back. That was illegal." Lopez: "I needed to come to see that woman and to understand what was happening." The court: "It doesn't make any difference what your needs were." Lopez: "Now, I know that."). Moreover, although it occurred after Lopez officially declared that he would represent himself, the district court explained before trial began what elements the jury would have to find Lopez guilty of in order to convict him under section 1326.

This court has refrained from requiring the district court to use a particular script when conducting an inquiry into whether a defendant knowingly and intelligently waived the right to counsel. *See Hernandez,* 203 F.3d at 623. Indeed, we have stated that the focus should be on what the defendant understood, rather than on what the court said or understood. *See United States v. Kimmel,* 672 F.2d 720, 722 (9th Cir.1982). The district court's conversations with Lopez at several hearings before the one on July 12th indicated that Lopez understood the charges for which he was to be tried. Moreover, as asserted by the government, there is a difference

between agreeing with the charges and understanding them. It was clear that Lopez did not want to be punished for his actions. This is not to say, however, that he did not understand why he was in court and what charges were pending against him.

■ Finally, Lopez was assisted by very competent advisory counsel. The presence of advisory counsel is not itself a determinative element in our assessment of whether a defendant understood the charges pending against him; however, it is one factor we consider in our analysis. Here, while Hall's participation was limited by Lopez's assertion of his right to represent himself, *see McKaskle*, 465 U.S. at 177, 104 S.Ct. 944 (noting that "[i]f standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded."), her presence, and assistance before trial, further supports our conclusion that Lopez understood the charges pending against him. *See, e.g., Locks v. G.W. Sumner*, 703 F.2d 403, 407 (9th Cir.1983) ("The Supreme Court and this circuit have recognized the efficacy of hybrid representation to aid pro se defendants and protect the integrity of the trial process."). Indeed, the district court asked Hall to explain to Lopez "what a jury trial is, and what we're going to do." We conclude that Lopez understood the charges for which he was to be tried and knowingly and intelligently waived his Sixth Amendment right to counsel.

### B. *Ability to Abide by Courtroom Protocol*

■ A trial court may refuse to permit a criminal defendant to represent himself when he or she is "not able and willing to abide by rules of procedure and courtroom protocol." *Savage v. Estelle*, 924 F.2d 1459, 1463 (9th Cir.1991); *United States v. Flewitt*, 874 F.2d 669, 674 (9th Cir.1989) (defendant's right to self-repre-

sentation does not allow him to engage in uncontrollable and disruptive behavior in the courtroom). Counsel for Lopez argues that, because Lopez repeatedly refused to follow courtroom procedure and protocol, the district court erred in allowing him to waive counsel. This argument is unpersuasive.

■ It is true, as Lopez argues, that "the only issue Mr. Lopez–Osuna wanted resolved was the issue of time which he raised at trial although he was not supposed to," and that at times Lopez "would not take any action other than deciding to represent himself." Despite this, Lopez did not exhibit obstructionist courtroom behavior that substantially delayed the proceedings. Lopez was not familiar with the rules of evidence or the specifics of criminal procedure; however, this lack of legal knowledge, without severely disruptive behavior, is not sufficient to override Lopez's right of self-representation. *See Flewitt*, 874 F.2d at 676 ("The defendants' actions in this case did not rise to the level of obstructionist behavior that threatened the dignity of the courtroom. They simply failed to prepare their defense. That alone cannot justify revoking their constitutional right to self-representation.").

■ Lopez expressed a timely and unequivocal desire to represent himself. *See Hernandez*, 203 F.3d at 620 (stating that a defendant's assertion of his right to self-representation must be timely, unequivocal, knowing and intelligent, and not for purposes of delay). Moreover, he understood the charges pending against him and, while unfamiliar with the structure of a trial and the technical rules of evidence, he was able to abide by courtroom procedure so as not to substantially disrupt the proceedings. These facts, in conjunction with the presence of Ms. Hall as advisory counsel, convince us that the district court properly allowed Lopez to represent himself. We therefore deny his claim under the Sixth Amendment.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court. The Speedy Trial Act was not violated in this case. Lopez waived his right to be indicted on the section 1326 charge and agreed to proceed by way of information on the section 1325 charges, which qualified as "other proceedings" under the Act. All time spent on these "other proceedings" was thus properly excluded from the thirty-day arrest-to-indictment deadline, and Lopez was indicted in a timely manner. Moreover, the district court was correct in allowing Lopez to exercise his Sixth Amendment right of self-representation.